DOUCET, Judge.
This is an appeal from the trial court’s judgment dismissing the plaintiff’s medical malpractice action as prescribed.
On September 21, 1987, the plaintiff, Edward Ward, was struck in the right calf with a rusty wire. He went to the emergency room at St. Francis Cabrini Hospital in Alexandria, Louisiana. There, the puncture wound was treated by Dr. Munir Khalid Abasi. Dr. Abasi noticed that the wire had pierced a suspicious looking mole. He removed a portion of the mole for biopsy. The mole was found to be cancerous. Dr. Abasi referred Ward to Dr. James P. David for removal of the mole.
Dr. David removed the mole on October 8, 1987. After doing so, he sutured the incision, including the earlier puncture wound, tightly closed. On October 10, 1987, Ward’s temperature shot up to 103 degrees. Upon examination Dr. David found that the wound was swollen and emitted a foul odor. He removed the sutures to relieve the swelling. On October 11, 1987, the wound had dark margins which looked like a gangrenous condition. A tissue sample sent to the lab was found to contain Clostridia organisms. This is a bacteria which causes gas gangrene. Dr. David removed the dead tissue from the wound the same day. He then arranged for Ward to be transferred by helicopter to Lake Charles, Louisiana for hyperbaric oxygen treatment of the gangrene.
Dr. Thomas McCalla took over Ward’s treatment in Lake Charles. He stated that *779 when he saw Ward late on October 11, 1987, approximately 90% of the calf tissue was dead and the leg was not salvageable. Early on the morning of October 12, 1987, McCalla amputated Ward’s right leg above the knee.
In December 1988, or January 1989, Ward consulted an attorney with regard to a worker’s compensation claim. That attorney suggested that Ward might have a medical malpractice claim. Ward then retained another attorney to pursue the malpractice claim. The claim was filed on April 27, 1989. On October 18, 1990, the Medical Review Panel rendered an opinion finding that the evidence did not support the conclusion that Dr. Abasi, Dr. David, and Dr. McCalla failed to meet the applicable standard of care and that the “conduct complained of was not a factor of the asserted resultant damages.” Ward then filed a petition alleging medical malpractice against Drs. Abasi, McCalla, and David, and Dr. David’s insurer. Drs. Abasi and David filed exceptions of prescription. On January 13, 1992, the trial court rendered judgment granting the exceptions and dismissing the plaintiffs claim at his cost. Ward appeals.
Prescription in medical malpractice actions is governed by La.R.S. 9:5628 which provides in pertinent part that:
No action for damages for injury or death against any physician, chiropractor, dentist, psychologist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
This rule of prescription is subject to a discovery rule. Prescription is suspended during the period in which the cause of action was not known or reasonably knowable to the claimant. Maung-U v. May, 556 So.2d 221 (La.App. 2 Cir.), writ denied, 559 So.2d 1385 (La.1990). In this regard the Louisiana Supreme Court in Griffin v. Kinberger, 507 So.2d 821, 823-824 (La.1987) stated that:
The one-year prescriptive period commences running on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. Lott v. Haley, 370 So.2d 521 (La.1979). Constructive knowledge sufficient to commence the running of prescription, however, requires more than a mere apprehension that something might be wrong. Cordova v. Hartford Accident & Indemnity Co., 387 So.2d 574 (La.1980). Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. Young v. Clement, 367 So.2d 828 (La.1979). Thus, even if a malpractice victim is aware that an undesirable condition developed at some point in time after the medical treatment, prescription does not run as long as it was reasonable for the victim not to recognize that the condition may be related to the treatment,
(footnote omitted)
See also: Maung-U v. May, supra; Dufriend v. Tumminello, 590 So.2d 1354 (La.App. 5 Cir.1991), writ denied, 592 So.2d 1335 (La.1992); and Smith v. MacArthur Surgical Clinic, 610 So.2d 245 (La.App. 3 Cir.1992).
Where, as in this case, a claim is prescribed on the face of the petition, the plaintiff has the burden of establishing an interruption or suspension of prescription. Lima v. Schmidt, 595 So.2d 624 (La.1992); Andrus v. Patton, 394 So.2d 714 (La.App. 3 Cir.1981).
After carefully reviewing the record as a whole, we conclude that the plaintiff failed to carry this burden. Plaintiff made only minimal inquiries into the cause of the *780 loss of his leg. He did not consult any other doctors. Nothing in the record indicates that he was misled as to the cause of the loss of his leg. The record as a whole convinces us that it was not reasonable for the victim to fail to recognize that the loss of his leg may have been related to his treatment for the puncture wound and mole, especially in light of the rapid progression of events from puncture wound to loss of leg.
Accordingly, the judgment of the trial court is affirmed at plaintiffs cost.
AFFIRMED.
WOODARD, J., dissents.