704 So.2d 373 (1997)
Jessie PARKER, Plaintiff-Appellant,
v.
DR. X, Defendant-Appellee.
No. 97-841.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1997.
*374 Sera Hearn Russell III, Lafayette, for Jessie Parker.
Donlon Pugh, Monroe, for Dr. X.
Before DOUCET, C.J., and YELVERTON and SAUNDERS, JJ.
DOUCET, Chief Judge.
In this medical malpractice action, plaintiff, Ms. Jessie Parker, appeals a judgment of the trial court dismissing her petition via an exception of prescription. We affirm.

FACTS
Plaintiff's petition, which was filed September 8, 1995, states that in early 1992, she consulted Dr. James J. Trahan, her long time physician, concerning a lump in the upper right quadrant of her breast. Dr. Trahan allegedly told her it was the edge of her breast implant and recommended no further testing. Later that year, Ms. Parker told her obstetrician/gynecologist (OB/GYN) about the lump. He "... insisted she immediately have a biopsy of that breast lump." The biopsy indicated the lump was malignant. Other pleadings and testimony at the hearing on defendant's exception of prescription establish that Ms. Parker underwent surgery to remove the malignancy in September 1992. Thereafter, on April 29, 1994, she filed a "Medical Review Panel Complaint" against Dr. Trahan.

LAW AND DISCUSSION
The law which sets out the time limit for the filing of claims of medical malpractice is found in La.R.S. 9:5628, which reads as follows:
A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
Jurisprudence interpreting the foregoing statute can be found in Gassen v. East Jefferson General Hosp., 96-590 (La.App. 5 Cir. 12/30/96); 687 So.2d 120, writ denied, 97-738 (La.5/1/97); 693 So.2d 735, which states the following:
In Rayne State Bank and Trust Co. v. National Union Fire Ins. Co., 483 So.2d 987, 995 (La.1986), the Louisiana Supreme Court said:
Mere notice of a wrongful act will not suffice to commence the running of the prescriptive period. The reason is clear. In order for the prescriptive period to commence, the plaintiff must be able to state a cause of actionboth a wrongful act and resultant damages. Because the damage must necessarily occur after the wrongful act, prescription runs from that point and not from the date of the *375 wrongful act. See Owens v. Martin, 449 So.2d 448 (La.1984), reaffirming Jones v. Texas & Pacific Ry. Co., 125 La. 542, 51 So. 582 (1910).

* * * * * *
As this court stated in Jones v. Texas & Pacific Ry. Co., supra at 583:
A damage can be considered to have been sustained ..., only when it has manifested itself with sufficient certainty to be susceptible of proof in a court of justice.
....
This Court, in Dufriend v. Tumminello, 590 So.2d 1354, 1356 (La.App. 5 Cir.1991) discussed what constitutes sufficient notice to start the running of prescription:
The one-year prescriptive period begins to run on the date the injured party discovers or should have discovered the facts upon which the cause of action is based. Griffin v. Kinberger, 507 So.2d 821 (La.1987). Constructive knowledge sufficient for prescription to commence is, however, more than mere apprehension that something is wrong. Griffin v. Kinberger, Id. Prescription does not begin to run against a party who is ignorant of the pertinent facts, as long as the ignorance is not willful, negligent or unreasonable. Griffin v. Kinberger, Id.; Maung-U v. May, 556 So.2d 221 (La.App. 2nd Cir.1990). Thus, prescription does not commence even when an undesirable condition develops some time following medical treatment if it was reasonable for the victim not to have recognized that the condition may have been related to the treatment. Griffin v. Kinberger, supra; Maung-U v. May, supra.

On the other hand, when the facts show the injured party "had knowledge of facts strongly suggestive that an untoward condition or result may be the result of improper treatment and there is no effort by health care providers to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the facts and cause of action are reasonably knowable to the plaintiff" for purposes of the one year prescriptive period; plaintiff's inaction for more than one year under such circumstances is not reasonable. Maung-U v. May, Id. at 225. Further, when the plaintiff's claim is prescribed on its face, the plaintiff has the burden of proof to rebut the exception of prescription. Blanchard v. Reeves, 469 So.2d 1165 (La.App. 5 Cir. 1985).
... Ignorance of the probable extent of injuries materially differs from ignorance of actionable harm, which delays commencement of prescription. Percy v. State of Louisiana, 478 So.2d 570 (La.App. 2nd Cir.1985).
[Emphasis added].
Furthermore, the Second Circuit in Harlan v. Roberts, 565 So.2d 482, 486 (La. App. 2 Cir.1990) noted that:
A review of the jurisprudence dealing with prescription in medical malpractice indicates that each case must be decided on its own peculiar facts. The law does not require that a patient be informed by an attorney he has a medical malpractice action before prescription begins to run. Likewise, it is not a requirement that a patient be informed by a medical practitioner of possible malpractice before prescription will begin to toll. The court may take into consideration such factors as the patient's educational background, intelligence and past experience with medical procedures in assessing whether or not he had knowledge. Lambert v. Metrailer, 485 So.2d 69 (La.App. 1st Cir.1986), writ denied, 488 So.2d 1023 (La.1986).
Id. at 123, 124.
In the case sub judice, Ms. Parker visited her family physician in April 1992. At that time he failed to diagnose her lump as a possible tumor or to order tests to confirm or rule out a malignancy (i.e., his acts of omission). Ms. Parker's lump was diagnosed as malignant in August 1992, and she underwent surgery for the malignancy in September 1992 (resultant damages). It is clear that at the time of her surgery (at the latest), she was aware or should have been aware of *376 the facts upon which her cause of action is now based. However, it was not until April 29, 1994, that Ms. Parker filed her request for the convening of a medical review panel. In addressing an exception of prescription, this court, in King v. Dean, 95-760, p. 4 (La.App. 3 Cir. 12/6/95); 664 So.2d 850, 852 stated:
This court recognizes that generally the party raising the peremptory exception urging prescription bears the burden of proof, unless prescription is evident from the face of the pleadings, in which case plaintiff bears the burden of showing an action has not prescribed. Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992).
The record in the case sub judice contains pleadings, from which it would appear that plaintiff's case has prescribed. It, therefore, becomes her burden to establish the action has not prescribed.
At the hearing on defendant's exception of prescription held February 24, 1997, Ms. Parker admitted that she considered filing her suit against Dr. Trahan in September 1992, and discussed the subject with her husband and children. Her explanation for not doing so was "... because I didn't think I had a case." She explained that she didn't think she had a case until January 1994, when she got a brochure from some attorneys in New York who were handling litigation in connection with breast implants.
We are unconvinced by plaintiff's explanation. As the fifth circuit in Gassen, 687 So.2d at 124, quoted the second circuit in Harlan, 565 So.2d at 486, "The law does not require that a patient be informed by an attorney [s]he has a medical malpractice action before prescription begins to run." By Ms. Parker's own admission, she considered filing a medical malpractice complaint in September and even discussed this with her family. We find, as did the trial court, that in September 1992, Ms. Parker had sufficient facts and knowledge for prescription to commence to run.
Accordingly, for the reasons stated, the judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant, Ms. Jessie Parker.
AFFIRMED.