I WOODARD, Judge.
On April 10, 1996, Dr. Charles Rogers performed a bariatric surgical procedure, on Mrs. Frances Scales at Rapides Regional Medical Center (RRMC) in Alexandria, Louisiana. He had been prohibited from performing such procedures four months prior to her operation. Approximately ten days after the surgery, she developed a post-operative infection which, allegedly, resulted from the operation.
Early in 1998, she and her husband saw an advertisement, in the Arkansas Democrat newspaper, discussing a pending investigation and possible class action against Dr. Rogers. On March 16, 1998, one year and eleven months after her surgery, Mr. and Mrs. Scales filed a complaint with the Louisiana Patients’ Compensation Fund, alleging that Dr. Rogers and RRMC deviated from the applicable standard of care during the April operation. Three days later, they filed a petition for damages, claiming that RRMC had negligently credentialed and supervised Dr. Rogers. Soon thereafter, RRMC filed a peremptory exception of prescription, which the trial court granted on June 18, 2001. Mr. and Mrs. Scales appeal. We reverse.
}fi % i¡« sfc
Prior to working at RRMC, Dr. Rogers practiced medicine in rural Arkansas. He had been Mrs. Scales’ physician for several years prior to this litigation. In 1995, after RRMC had recruited him, she followed him from Arkansas to Louisiana for continuity of care, which included the April 10, 1996 surgery. Within six months of commencing his employment at the hospital, his major complication rate, during bariatric surgeries, skyrocketed to 50%-more than four times the national average. Consequently, RRMC began an investigation and, subsequently, placed him on probation and summary suspension, prohibiting him from performing bariatric surgery. Also, the hospital ordered him to undergo remedial education before returning to the operating room to perform this type of procedure.
None of Dr. Rogers’ patients were privy to the investigation or suspension, because the hospital proceedings were kept confidential, pursuant to La.R.S. 13:3715.3(A)(2), which provides, in pertinent part:
I JA]11 records, notes, data, studies, anal-yses, exhibits, and proceedings of: any hospital committee ... including, but not limited to, the credentials committee ... shall be confidential.
Additionally, La.R.S. 44:7(D)(2) mandates that the records and proceedings of any hospital shall be confidential, not public record, and not available for court subpoena. However, when Dr. Rogers sued RRMC in federal court, the hospital published its review proceedings. Those proceedings form the basis of Mrs. Scales’ claim against it.
STANDARD OF REVIEW
An appellate court may review a question of law to decide whether the trial court’s decision is legally correct or incorrect.[1] If the trial court’s decision was based on its erroneous application of law, rather than on a valid exercise of discretion, its decision is not entitled to our deference.[2] When we find that a reversible error of law was made in the lower court, we must redetermine the facts, de novo, from the entire record and render a judgment on the merits.[3]
*928 Medical Malpractice
La.R.S. 9:5628(A) states the time limit for filing medical malpractice claims. The statute provides, in pertinent part:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the ^latest within a period of three years from the date of the alleged act, omission, or neglect.
(Emphasis added.)
Generally, prescription runs against all parties and begins to accrue as soon as the plaintiff may assert his or her claim. In the instant case, the plaintiffs rely on the doctrine of contra non valen-tem. This doctrine prevents the accrual of prescription when the plaintiffs cause of action is not known or reasonably knowable by the plaintiff, regardless of whether the defendant induced her ignorance.
The burden of proof for an exception for prescription is usually on the party pleading it.[4] However, when the plaintiffs petition, on its face, indicates that prescription has run, the burden shifts to the plaintiff to show why the claim has not prescribed.[5] In the instant case, Mr. and Mrs. Scales clearly bore this burden.
When Mrs. Scales followed Dr. Rogers to Louisiana, she did not know of his history of surgical complications. In fact, she was unaware of any complaints filed against him and did not know, on December 7, 1995, that he had lost his privileges to perform bariatric surgeries at RRMC. Consequently, she trusted him to perform a ventral hernia repair, abdominoplasty and/or gastric banding. Not once did anyone inform her that Dr. Rogers was prohibited from performing gastric banding.
She suffered various complications from the surgery, such as the incision opening up, a post-operative infection, a cyst-like lesion that became inflamed in her left anterior abdominal wall, and gastric outlet obstruction, which required several followup visits.
When she discovered her infection, she saw two physicians, who informed her that it resulted from the surgery. RRMC contends that, at that moment, she should have known that a malpractice claim existed. This is debatable, but even if we were to accept it, arguendo, we must assume that, at that time to her knowledge, her claim existed solely against Dr. Rogers, as the hospital does not allege that he was its | ¿employee, which would possibly render it liable for his malpractice.[6] Thus, she had one year from the date of discovery, April *929 10, 1996, to file suit against him. However, since she is not pursuing her potential action against the doctor, we examine the facts, concerning the hospital only, under the malpractice statute.
In Griffin v. Kinberger.;[7] the Louisiana Supreme Court stated 'that the focus in a prescription claim should bear on the reasonableness of the plaintiffs inaction. Thus, the question becomes whether Mrs. Scales knew or should have known of the cause of action.[8] Jurisprudence specifically refers to facts that the plaintiff could readily ascertain,[9] and, prescription does not commence as long as it is reasonable for the plaintiff not to recognize that the condition may be related to ill treatment.
Not until Dr. Rogers sued RRMC in federal court did Mrs. Scales have “knowledge of facts strongly suggestive [of] an untoward condition or result of improper treatment”[10] by RRMC. Only then, did, or could, she have enough knowledge and foresight to inquire further and, ultimately, receive voluminous physician discipline records, confirming that RRMC possibly had negligently credentialed and supervised him.
The hospital contends that because she was aware that she had a post-operative infection, on April 20, 1996, she was, also, aware that a potential claim existed against the hospital; therefore, the claim prescribed after one year. The hospital fails to distinguish between prescription, concerning a negligent credentialing or supervision claim against a hospital and prescription, affecting a routine surgical malpractice claim against a physician. Various complications from an operative procedure may be sufficient to trigger prescription against a surgeon; however, Mrs. Scales’ ignorance of RRMC’s secret investigation, probation, and suspension falls within the doctrine of contra non va-lentem. While standard medical procedure lRdictates that patients be informed of the risk of infection from surgery, an infection, per se, does not, necessarily, suggest malpractice. And, it most certainly does not automatically implicate the hospital. To rule, otherwise, would be to invite patients, who acquire an infection after a surgical procedure to immediately sue the physician and hospital.
The information, regarding Dr. Rogers’ investigation, remained concealed for several years. As such, Mrs. Scales was not aware, nor could she have possibly known, of anything untoward concerning the hospital until she discovered an impending investigation against him, almost two years after her surgery. Therefore, she did not have sufficient information to incite curiosity, to excite attention, or to put her on guard and call for inquiry until that time. Consequently, the facts and cause of action were not reasonably known to her for purposes of the one year prescriptive period, and her inaction for more than one year under such circumstances was reasonable. Notwithstanding, she and her husband filed suit in March 1998, well within the three year statutory period under La.R.S. 9:5628.
Accordingly, we find that the trial court erred in sustaining the exception of prescription.
Because the hearing which initiated this appeal was a hearing for an exception of *930 prescription, many documents were not admitted into evidence, as they were irrelevant or immaterial to the issue, then, at bar. Without their submission, we cannot rule on any of the issues regarding negligent supervision or credentialing.
Accordingly, for the reasons stated, we reverse the trial court’s judgment and remand for a trial on the merits.
CONCLUSION
On April 10,1996, Dr. Rogers performed surgery on Mrs. Scales, who later developed a post-operative infection. RRMC concealed the investigation and suspension proceedings against Dr. Rogers for several years. Consequently, she did not know that she had a claim against the hospital until Dr. Rogers sued RRMC, and it revealed results of the secret investigation. Therefore, she did not know of her cause of action for purposes of the one year prescriptive period, and her inaction for more than one year under such circumstances was reasonable.
REVERSED AND REMANDED.

. Jim Walter Homes, Inc. v. Jessen, 98-1685 (La.App. 3 Cir. 3/31/99); 732 So.2d 699.

. Kem Search, Inc. v. Sheffield., 434 So.2d 1067 (La.1983).

. Lasha v. Olin Corp., 625 So.2d 1002 (La. *928 1993).

. Younger v. Marshall Indus., 618 So.2d 866 (La.1993).

. Lima v. Schmidt, 595 So.2d 624 (La.1992); See also Anderson v. Beauregard Mem’l Hosp., 97-1222 (La.App. 3 Cir. 3/6/1998), 709 So.2d 283.

. Prater v. Porter, 98-1481 (La.App. 3 Cir. 3/3/1999), 737 So.2d 102; see also Powell v. Fuentes, 34,666 (La.App. 2 Cir. 5/9/2001), 786 So.2d 277, writ denied, 01-1675 (La.9/21/01), 797 So.2d 674.

. 507 So.2d 821 (La.1987).

. Maung-U v. May, 556 So.2d 221 (La.App. 2 Cir.1990).

. Id.

. Parker v. Dr. X, 97-841 (La.App. 3 Cir. 12/10/97), 704 So.2d 373, 376 quoting Dufriend v. Tumminello, 590 So.2d 1354, 1356 (La.App. 1 Cir.1991).